# SMITH H. BRACEY AND NELLIE A. BRACEY, Co-Partners, Trading as S. H. Bracey Company, et al.

## *vs.*

## DAVID McGARY.

*Alterations in instruments: question for jury.   Agents: evi-
   dence of—; proof of agency; authority to correct dates.
      Contracts: providing for notice; waiver; effect of—.
         Declarations: amendments; proceeding with
            trial; discretion of court.   Evidence:
               exclusion; subsequent admission.
                  Prayers: effect of court's
                     instruction.*

Where the date of an instrument has not been stricken out, but a different date was simply written over it in lead pencil, the court is not warranted in refusing to admit the instrument in evidence, but the question whether the instrument has been altered should be submitted to the jury.          pp. 269-270

The introduction of evidence of an act of an alleged agent, without first proving his agency, does not warrant the reversal of a judgment where it appears from the record that the agency was subsequently proved.          p. 269

If there is a mistake in the date of a written contract, the promisee has the right to correct the date with the consent of the promissor's agent.          p. 271

The question whether a party to a contract has consented to an alteration by the other party is to be determined by the jury.
          p. 271

Where a contract provides for notice in writing by one of the parties, the right to receive such notice may be waived by the conduct of the other party.          p. 272

Proof of a waiver of notice obviates the necessity of complying with it.          p. 273

The question whether the trial judge should permit a declaration to be amended and should proceed with the trial, is in the discretion of the trial judge, and will not be reviewed in the absence of a great abuse of discretion.                    p. 273

Where, in addition to prayers granted at the defendant's request, the trial judge of his own accord instructs the jury, it is not improper to mark such instruction "Granted as court's own instruction," and to head it "Court's Instruction."          p. 278

When the court gives an instruction, whether framed by itself or the attorneys, it is the duty of the jury to follow it, and if the court errs the remedy is by appeal.                    p. 278

*Decided March 7th, 1919.*

Appeal from the Baltimore City Court. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS and URNER, JJ.

*Harry N. Abercrombie* and *Arthur L. Jackson,* for the appellants.

*Israel B. Brodie* (with whom were *Harry B. Wolf* and *Brodie & Sacks* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellants for $3,430.00. In addition to the common counts there are five special counts, but all of them are on an alleged contract by the appellants to purchase from the appellee 3,000 shares of the preferred stock and 6,000 shares of the common stock of the Howie Mining Company, and to pay therefor the par value of the preferred stock, to wit, $3,000.00. The agreement, after reciting that McGary (the appellee) who is the party of the second part, had purchased from S. H. Bracey Company, the party of the first part, the shares of stock above mentioned, provided that in consideration of said purchase and of the sum of one dollar

in hand paid, the party of the first part "agrees to and does hereby guarantee to repurchase, at the election of the second party, on thirty days written demand and notice at any time after one year, and within two years from the date of this instrument, the amount of preferred and common stock so sold to the party of the second part, and pay therefor the amount of the par value of the said preferred stock with interest thereon at seven per cent. to the date of such repurchase," etc.

The date of the agreement alleged in the amended declaration was the *28th* day of September, 1914. The agreement has in ink the *16th* day of September, and written in lead pencil over the 16th is 28. The introduction of the agreement in writing was objected to on the ground that it is apparent upon the face of the paper that it had been materially altered by changing the date. The objection was overruled and the contract was admitted in evidence. To that action of the Court the defendant excepted, and that is presented by the first bill of exceptions. As the effect of the alleged alteration is one of the principal questions in the case, we will first consider that. Inasmuch as the "16th" was not stricken out, but "28" was simply written in lead pencil over it, it might well be questioned whether there was properly speaking an alteration, if that was all which occurred. It was therefore not so clearly shown upon its face that it had been altered as to authorize the Court to refuse to admit it in evidence, and there was at least sufficient doubt about it to submit the question to the jury. 1 R. C. L. 969, sec. 5; 2 C. J. 1292, sec. 218. But in addition to that the appellee contends that what was done was with the full consent of Wyatt, the general manager for the appellants. The rule that before the act of an alleged agent can be offered in evidence the agency must first be proven is relied on by the appellants, but even if it be conceded that there was error in admitting the evidence, until the agency was proven, it can not in this case be held to be a reversible error. After the contract was admitted, the appellee testified that he came

into possession of it on the 28th of September, 1914, that there were in the office Bracey, his wife, Nellie A. Bracey, a man named Dorsey, one named LaDue and C. E. Wyatt, who was appellants' general manager; that Bracey and his wife put the contract and the two certificates of stock which he had purchased in an envelope and he took them to his room where he discovered that there was a mistake of the date; that he went back to Bracey's office and he was not there, but Wyatt was, and he pointed out the mistake to Wyatt and made the lead pencil mark of the 28th in the presence of Wyatt, that he "wanted it to compare with the correct date"; that Wyatt said: "When Bracey comes back we will have this corrected, but it is immaterial, it does not amount to nothing anyhow * * *. You are right, this is the 28th;" that "there was nothing more said about it. So Bracey did not come back for quite a while. I *writ* the '28th' myself with lead pencil in the presence of Wyatt." In answer to the question, "Who told you to do that, did Wyatt say anything," he replied: "Wyatt agreed to it. I done it myself. Wyatt agreed to it; saw me make this pencil mark." McGary also said that that was the fifth purchase of similar stock he had made from Bracey, that he had made one on September 16, 1914, and on the 28th he gave Bracey for the 3,000 shares of preferred and 6,000 shares of common stock a contract of a sale of some property he had sold to one Lashorn for $3,000 and also a note of Lashorn for $100.

Bracey testified that he and his wife were partners trading as S. H. Bracey Company, and that Wyatt was their General Manager; that in his absence she signed some blank contracts for Wyatt, that Wyatt "had authority and if you can show anything in his writing and signed by my wife I will acknowledge it. He was authorized to deliver contracts to purchasers of stock. He had full and complete authority to do anything and everything in my absence, and those blanks were entrusted to him." Bracey testified that he was not in Wheeling, where this transaction took place, on September 28, but was in New York. Wyatt also denied the transaction

was on the 28th, and said it was on the 16th of September. Mrs. Bracey testified that she was a partner, that Wyatt was the manager for Mr. Bracey and herself, and she also said that he was not in Wheeling on the 28th of September. It was therefore shown that Wyatt had full and complete authority to do anything and everything in Bracey's absence, and it would be a gross injustice to defeat the appellee's recovery on the ground that he had altered the contract, if what he testified to was true. If in point of fact there was a mistake in the date, and he noted it on the contract, with Wyatt's consent—the latter representing S. H. Bracey Company—there can be no doubt about the right of McGary to make the alteration, if it be such. 1 R. C. L. 987, sec. 25; 2 C. J. 1238, sec. 113. The question of consent is for the jury. 1 R. C. L. 971, sec. 5; 2 C. J. 1292, 1294, secs. 218 and 221.

That being so we have indicated above that even if there was error in admitting the contract or the evidence of the appellee in reference to the date before it was shown that Wyatt was duly authorized, as that subsequently appears in the testimony, we would not reverse the judgment for that reason. It became a question of fact for the jury, and it was submitted by the Court's instruction, and the defendants' third prayer, which was granted, instructed the jury that if they found that the contract sued on was in fact made on the 16th of September, 1914, then under the pleadings the verdict must be for the defendants. The appellants have therefore no reason to complain of that action of the Court. The question we quoted above, as to who told the appellee to write the 28th on the contract, was objected to, and the answer is given. The action of the Court on that objection constitutes the second exception, and there can be no doubt about the Court being correct in that ruling.

The third, fourth and fifth exceptions can be considered together. The appellee testified that he went to see Mr. and Mrs. Bracey in the latter part of 1915 to get his money which he claimed to be due on this contract. That was in the third exception, and in the fourth he testified that Bracey

told him to bring him his papers and he would pay him.    He
said he told him to bring in the stock certificates on Monday
and that on the following Saturday he would pay him $23,000
at seven per cent.; that that took in all the contracts at that
time, including the one in this suit.    There was a motion to
strike out that evidence, which was overruled, and an excep-
tion was taken.    Undoubtedly the appellants could waive the
notice in writing provided for in the contract, and the testi-
mony in the third and fourth exceptions tended to show such
waiver.    McGary said he went on Saturday and Bracey put
him off until Tuesday; that he went back Tuesday, but he
did not pay him, and he demanded the money.    He told
Bracey that he would sue him and he went out to get a lawyer.
He first employed Mr. Jones, who did not get the money,
and then he got another lawyer.    He said that the written
notice of December 14, 1915, was signed by him, but that the
body of it was written by Wyatt at his request.    The appel-
lants admitted service of the notices, one of which was to S.
H. Bracey, and a similar one to Mrs. Bracey.    It was as fol-
lows:

> "Notice is hereby given you that in pursuance of a
> certain contract or guarantee agreement underwriting
> my several blocks of stocks of the Howie Mining Com-
> pany, aggregating Twenty-three thousand two hun-
> dred dollars ($23,200.00) and interest thereon, I am
> giving you the required thirty days' notice to retire
> the same under the conditions and agreements of said
> contract."

Counsel for the appellants noted an exception and asked
the Court to strike out the evidence relating to the waiver of
notice—that the other side could not take both positions in
reference to notice.    The Court overruled the motion, refused
to strike out the testimony and admitted the notices in writ-
ing, to which action the appellants excepted, and that consti-
tutes the fifth exception.    We find no error in that action of
the Court.    The appellee was not required to rely on the
waiver, and after finding that the appellants did not pay the

money, he had the right to give notice in writing—it being within the time named in the contract. The case of *Produce Exchange* v. *N. Y., P. & N. R. R. Co.,* 130 Md. 106, cited by appellants, does not in any way conflict with that conclusion. On the contrary it only shows that when a stipulation is waived, it is not necessary to show that it was duly observed, that. "The proof of waiver obviates the necessity of proving compliance." In the former trial of that case (122 Md. 231) there was a question as to whether a claim for a loss was made within the time named in the bill of lading, and the Court said it might be inferred from the circumstances mentioned that it was, but added that if it be assumed that it was not, "it is clear that this limitation could be waived." That case therefore shows that both positions—waiver and compliance—could be and were taken.

On cross-examination of McGary the attorney for appellants called his attention to the fact that he had in his declaration alleged that on the 16th of September, 1914, the defendants agreed to purchase from the plaintiff this stock, etc., and asked him if he referred to the contract of the 16th which he had, or to the one dated the 16th, which he said should be dated the 28th. He replied that he was referring to the one of the 28th, and thereupon, on motion of the plaintiff, the Court permitted him to amend his declaration and his bill of particulars filed to the common counts, so. as to aver the cause of action to be as of September 28th, instead of September 16th, and required the parties to proceed with the trial. That action was embraced in the sixth exception. It cannot be doubted that the allowance of the amendment was in the discretion of the Court, as was the question whether the trial should proceed. It would require a great abuse of the discretion vested in the trial Court to authorize this Court to review its action on such matters. In this case there was no such abuse shown as to even require us to go into that question. The case was not tried until June, 1918, and the record abundantly shows that the appellants knew as early as 1915 the contention of the appellee that the contract was

made on the 28th, and not on the 16th. Indeed, in the letter dated December 16, 1915, Bracey, in writing to McGary, said: "I am now informed that you forged that date so as to make it the 28th to cover the $3,000 block that you got on that date"—referring to September 16th. There could therefore have been no ground to claim surprise, even if we could review the action of the Court.

While time could have been saved by letting the witness answer the question presented by the seventh exception, it is impossible to find any injury by that ruling. The witness had already in effect answered the question, and the jurors, if men of ordinary intelligence, as they are presumed to be, could not have failed to understand what the notice meant and what the witness said. They certainly understood what the judge meant when he said: "He has answered that question by producing a sixth contract, six blocks of stock." Bracey spoke of "the $3,000 block," in the letter above referred to, and as each contract spoke of so much stock, there could not well be more than one meaning to the expression of the judge. It is not clear what is meant by the eighth exception. It is to the "action and ruling of the Court in refusing to have said papers marked and admitted in evidence." The record states: "The three contracts referred to by the witness in the aforegoing evidence were, first the contract that is the cause of action in this case; second, a contract for the repurchase of 6,000 shares of common stock, reading as follows;" (an agreement dated the 16th day of September, 1914, is then set out) "And third, a white paper, reading as follows." The latter is not a contract and does not purport to be one, but it is made up of statements "from Dunn's report and other reliable sources," as stated at the beginning in which a short history of Mr. Bracey is given, then a list of some of the assets owned by Bracey and wife, aggregating $930,000.00, and a great many other things which might have been pleasant for Mr. Bracey to read but most of them had nothing to do with this case, and none of them could have helped the cause of the appellants.

We do not see any relevancy the papers referred to in the ninth exception could possibly have to this case. The notice referred to was in reference to a guarantee of the Equitable Homestead Association stock, while the evidence showed that the appellee paid for the stock in the contract in this case by transferring an agreement with Lashorn to purchase Mc-Gary's property and a note for $100.00, from which appellee swore Bracey told him that he got $2,500.00. The guarantee of the Equitable Homestead stock of September 17, 1914, was however afterwards admitted, and hence its exclusion in that exception could not possibly have done any harm. The tenth exception was to the admission of a typewritten contract, filled in with pen and ink and dated October 5, 1914, calling for a repurchase of $5,000.00 of preferred stock. It was admissible to contradict the witness, if for no other purpose. The eleventh exception is not pressed. The letter and telegram offered in the twelfth exception were properly excluded. They could not have materially corroborated Bracey if they had been admissible or had been admitted without objection, as after all the time and place of their receipt depended on his evidence. The 13th, 14th, 15th and 16th exceptions are not pressed. The letter admitted in the seventeenth exception could have done no possible harm to the defendants, or have been of any benefit to the plaintiff.

This brings us to the prayers. The defendants offered eleven prayers, the third and fourth of which were granted as offered and the seventh as modified, and the others were rejected. The Court also gave an instruction of its own. The first and second, which sought to take the case from the jury, were properly rejected. The contention of the appellants is that there was no demand for the payment of the money, and hence under the contract the appellee was not entitled to recover. We have given our views above as to the waiver and the written notices, but it is contended that as the demand was for $23,200.00 and not specifically for the $3,000.00 provided for in the contract, there was really no

waiver and no demand. The evidence of the appellee and also of Mr. Jones, the attorney who called on Bracey, shows that he had the different contracts and certificates of stock with him, and that they amounted in the aggregate to $23,-200.00. Mr. Jones did not recall the exact amount, but he said "I had certain papers in my hand that aggregated $23,-000 * * *. I had several papers. I had some stock. I don't know whether I had one certificate or two certificates, and I had some yellow sheets. I don't know just what I did have. I had several papers, that is all I know." The Court then asked him to look at the cause of action and state whether that was one of the papers on which he founded a demand for $23,000.00, and, after examining the same, he replied, "I firmly believe that is one of the papers." Mr. Jones also testified that Bracey told him that he could not comply with the agreement and he offered him a note of himself and his wife; that "He did not deny any liability at all. He did not suggest for one minute that he did not owe the money. He practically admitted it by telling me that he would give me his wife's note signed by himself, a joint note." McGary testified that he went to Bracey's office in November or the first of December, 1915, "and made a demand; asked him to pay for this stock which he had promised to redeem, I asked Smith H. Bracey for this money"—again he said: "I asked Smith H. Bracey for this money that was due on this contract, or to redeem the stock back, which was to be redeemed in a year after the date, 1914; it was to become due, the first payment was due 1915, and he said he had not the money. He owned that he owed me." We have stated above what he said about bringing the stock certificates Monday and that he would pay him Saturday the $23,200.00 and seven per cent. He said, "That took in all of the contracts at that time, including this one." He explained that the reference to "a certain contract or guarantee agreement underwriting my several blocks of stock of the Howie Mining Company, aggregating" $23,200.00, referred to the aggregate of the different

contracts. In addition to that he said that Wyatt wrote the written notice for him and of course he understood that McGary referred to the aggregate. Then the letter of November 6, 1916, from Mrs. Bracey showed that they thoroughly understood what the appellee was claiming, and assured him that he would get his money if he was patient.

There can therefore be no doubt about there being ample evidence of a waiver, also to show that the demand was intended to cover the amount of this contract as well as the other contracts, and that these parties thoroughly understood that—even to the extent of proposing a settlement by giving their note. It is difficult to understand the theory of the fifth, sixth, eighth and eleventh prayers in reference to the shares of stock of the Equitable Homestead Association. That stock was not given under this contract, but was under a sale of 7,225 shares of stock of the Howie Mining Company, as shown by the guarantee itself. Moreover, the letter of McGary to Bracey said that he would take that stock back, "you trans (evidently meaning transfer,) the certificates over to me signed before a notary, and I will exchange the same amount back to you." We do not find in the record that the proposition was ever carried out, but on the contrary the letter of December 29, 1914, left the matter open. This suit is on the contract originally dated the 16th of September, 1914, which the plaintiff contends was the 28th, and recovery could only be had on that contract. It says that McGary had purchased 3,000 shares of preferred stock and 6,000 shares of common stock, while the guarantee, which includes the Equitable Homestead stock says that it was in consideration of 7,225 shares of preferred stock. That letter of December 29, 1914, admits that McGary had the guarantee on the $3,000.00 of stock that he paid cash for. Even if the Equitable stock was in this transaction, which the papers show was not the case, upon what principle those prayers should have been granted we do not understand. There is nothing in them submitting to the jury the question whether the defendants lost anything by the writing mentioned, or

whether McGary did not exchange the amount as he offered
to do, or whether Bracey did not get all or part of the pro-
ceeds of the Equitable stock.  There can be no possible doubt
about the Court being correct in rejecting all of those prayers,
and it is unnecessary to give other reasons for that conclu-
sion.  The seventh prayer was also properly rejected.  The
evidence shows that the appellee was ready to deliver the
stock upon payment of the money, but the appellants refused
or were unable to pay it.  What we have said is sufficient to
indicate our views on the question presented by the ninth
and tenth prayers, which were properly rejected.

There was no reversible error in the Court's instruction.
The appellee might well have complained, if he had lost the
case, for not submitting the question of waiver as well as that
of the notices, but the appellants have no reason to complain
of that instruction.  A good deal of space in appellants' brief
is taken up in criticising the fact that it was marked "Granted
as Court's own instruction," and is headed "Court's instruc-
tion."  So far as we are aware, something to the effect of those
endorsements is generally, if not always, written on instruc-
tions given by the Court, independent of, or in addition to the
prayers presented by the parties.  It has sometimes been
said, in opinions in this Court, that the lower Court should
have given instructions, instead of leaving the jury unin-
structed on points not presented by the prayers, or so pre-
sented that the Court did not approve them.  When the Court
gives an instruction, whether framed by itself or by the attor-
neys, it is the duty of the jury to follow it, and if the Court
errs, the remedy is by appeal.  Such action of the Court has
no similarity whatever to what was disapproved of in *United
Railways Co.* v. *Corbin,* 109 Md. 442, relied on by the appel-
lants.

It follows from what we have said that the judgment must
be affirmed.

> *Judgment affirmed, the appellants to pay the
> costs.*